E. H. LUIKART, RECEIVER OF HINDS STATE BANK OF ODELL, APPELLANT, v. BEATRICE NATIONAL BANK ET AL., APPELLEES.

FILED MAY 10, 1935. No. 29259.

*F. C. Radke, Clinton J. Campbell, James L. Brown* and *Barlow Nye,* for appellant.

*Peterson & Devoe* and *Jack & Vette, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and REDICK, District Judge.

GOSS, C. J.

The receiver sued defendants for $5,000 with interest from September 30, 1929, charging them on that date with a conspiracy by which the Hinds State Bank was defrauded in the sum named. From an adverse judgment

favoring both defendants, plaintiff appealed. The cause was tried to the court.

The action grows out of the dealings of Hinds and Hinds State Bank of Odell with Beatrice National Bank, which was correspondent and depositary of the Hinds bank. Hinds was president and managing officer of the Hinds bank. It had $20,000 capital stock, of which Hinds owned $18,500. For years Hinds had borrowed money, both for himself personally and for his bank, from the Beatrice bank. These loans were always secured by collateral regularly furnished by Hinds who was the only person with whom the national bank dealt in any of the matters. Hinds testified that all the money he borrowed from the Beatrice bank was for the aid and benefit of the Hinds bank. It was in fact borrowed to bolster up a depleted cash reserve.

The controlling events center around September 30, 1929. On the morning of that day the Beatrice bank held two notes of Charles N. Hinds for $5,000 each, secured by collateral, and two notes of the Hinds bank for $5,000 each, secured by collateral. Late that day Hinds came to the Beatrice bank with additional collateral from the Hinds bank and borrowed $5,000 more for the Hinds bank. The two Hinds bank notes and one Charles N. Hinds $5,000 note were taken up and three new notes were given by Hinds bank as follows: One for $5,000, another for $5,000 and the third for $10,000; this last also in effect renewing the debt evidenced by the Charles N. Hinds note for $5,000 taken up by mistake. But, in addition to the new collateral furnished on that day to secure the $5,000 fresh loan, the Beatrice bank also attached to the $10,000 note the collateral it had long held on the Charles N. Hinds $5,000 note taken up and merged in this $10,000 new note. These Charles N. Hinds collateral notes amounted to more than $5,000, were later paid by the makers to the Beatrice bank, more than paid the half of the $10,000 note for which Charles N. Hinds was responsible and left an excess which was applied on the $5,000 share of the Hinds bank's

part of its $10,000 note. So the Hinds bank did not pay the Charles N. Hinds note which had been taken up. His collateral, which had secured it, was carried forward as security for the debt and more than paid it. It is stipulated in the evidence that the three collateral notes, specifying them, amounting to $8,000 (but which we find from other evidence had originally totaled $6,100) "have all been paid in cash in full, with interest, the same being collateral to note 72 and the renewal notes of 72." This note number 72 was the original $5,000 Charles N. Hinds note. It was made September 11, 1928. It was renewed on April 26, 1929, as number 1732, and it was this renewal note which was taken up on September 30, 1929, and merged in the $10,000 note. To trace all the notes through the accounts of the banks and the oral testimony would unduly prolong this opinion. No valid controversy can arise from the evidence that the ultimate facts are as we have stated them.

The claim of the receiver against the Beatrice bank may be said to be based upon two of the notes at all times held by the Beatrice bank as collateral to notes number 72, its renewal, number 1732, and, after September 30, 1929, as collateral to number 3003, which was the $10,000 merged note heretofore referred to. These two notes were the Bernadt note of $2,500 and the Goeller & Tatro note for $2,600. It is claimed by the receiver that on July 9, 1929, and July 3, 1929, respectively, they were taken back into the Hinds State Bank, and credit was given to Hinds personally for them, so that on September 30, 1929, the Hinds State Bank owned them (together with the Hiatt note for $1,100) according to the records of the Hinds bank. The above facts were testified to by an auditor for the banking department, who testified, however, that while the Hinds bank records showed that it owned these notes on September 30, 1929, they were at that moment "in the hands of the Beatrice National Bank as collateral to the bills payable of the Hinds bank—what note, I don't know." On cross-examination of the witness it was developed

that the Hinds bank records did not show affirmatively that Hinds was given credit for these collateral notes and that the testimony on that point was speculative. The witness claimed to arrive at the conclusion by deduction, by some process of elimination, which the trial court did not accept, nor do we.

The records of the Hinds bank showed positively that Hinds had purchased and paid that bank for these collateral notes in 1928 and owned them personally when he had put them up as collateral to his first $5,000 note with the Beatrice National Bank. It is a fair inference from the evidence that the Beatrice bank continued to hold them as collateral until they were paid by the makers and the proceeds applied to the debts for which they were held as security. Both Wallace Robertson, president of the Beatrice bank, and Charles N. Hinds so positively testified.

This review is concerned with questions of fact. The evidence seems to us to negative any knowledge or notice brought home to Beatrice National Bank or its officers that Hinds did not have full right to pledge the collateral. The evidence further seems to indicate that Hinds actually owned these collateral notes. The evidence does not sustain the burden on the plaintiff to prove otherwise. There was no evidence of any conspiracy of the two banks or by their officers to defraud the Hinds State Bank by means of the transactions. Particularly as to the acts and conduct of the Beatrice bank the evidence on this subject is clear.

The trial court, who observed and heard the witnesses, found no liability of either defendant to the Hinds State Bank. We are of the opinion the judgment was right. It is

AFFIRMED.